Brian Gennaria, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 11, 1983, to Judges Rogers, Blatt and Craig, sitting as a panel of three.

*Peter B. Macky,* for petitioner.

*Steven J. Neary,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

Opinion by Judge Blatt, July 5, 1983:

Brian Gennaria (claimant) appeals here an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's denial of benefits pursuant to Section 402(b)(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1) (voluntary quit without cause of a necessitous and compelling nature).

The Board found that the claimant was last employed as a machine operator by Cabinet Industries (employer). He had a medical history of chronic bron-

chitis and received a medical leave of absence until March 8, 1981. He returned to the employer's worksite the next day with a medical certificate recommending that his exposure to dust be temporarily limited so as to avoid aggravating his bronchitis. At a meeting of the claimant's foreman, the personnel manager, the vice-president, and the production manager, at which the claimant was not present, it was concluded that no suitable work was then available for him, and, after he was so informed by the foreman, he went to visit the personnel manager who instructed him to report back to his foreman and seek permission to see the production manager. The claimant, however, did not return to seek this permission. The referee concluded, therefore, that the claimant had quit his position[1] and the Board affirmed, noting that "it remained incumbent upon claimant to follow his employer's procedures until a final determination was made" as to suitable work[2] or a second leave of absence.[3]

---

[1] The claimant vigorously denying that he had quit his position, testified at the hearings that he applied for benefits assuming that he was laid off because no work was available.

[2] It appears that this finding is not supported in the record, and that a final determination had already been made at the meeting. The claimant argues that, because there was no work available, a return visit to see the production manager, who had attended the meeting, would have been futile. The following excerpts of the testimony from the referee's hearing are illustrative of the claimant's position:

QCL: I have a couple of questions for Mr. Oh, I'm sorry, correct it, it's in my testimony. Just one other question. Mr. Gennaria, [the personnel manager] has just said that he had instructed you to see [the production manager]. Is that right?

AC: Right.

QCL: Did you attempt to explain to [the personnel manager] why it would be futile to see [the production manager]?

AC: Yes, but he wouldn't listen to me.

In a voluntary quit case,[4] of course, the claimant has the burden of proof to show cause of necessitous

QCL: And the reason is what?

AC: Because, well, like it was stated before, that [the foreman] said I had to wait in his office and he went over and I, went into the meeting. He came back and said that they decided that there was no work for me. And then I came back and he told me to go over and see [the personnel manager].

QCL: Now, who did [the foreman] tell you was in the meeting?

AC: he said [the vice-president] and [the production manager].

QCL: And himself?

AC: And himself.

QCL: He didn't tell you that [the personnel manager] was in the meeting.

AC: No.

QCL: And did you try to explain to [the personnel manager] that [the foreman] had told you that [the production manager] said there was no work for you?

AC: Yeah.

QCL: And did he keep saying, I don't want to hear anything about it?

AC: Yes.

QCL: Nothing further.

Later in the hearing, the personnel manager testified as follows concerning his confrontation with the claimant after the meeting:

QCL: Do you recall getting angry when you were discussing this situation with Mr. Gennaria?

AEW1: It depends on what you consider getting angry.

QCL: Well, did you raise your voice?

AEW1: I may have.

QCL: Did you keep saying, I don't want to hear anything about what [the foreman] said? Or words to that effect?

AEW1: Or words to that effect. That until after he had spoken with [the production manager] (multiple exchange)....

QCL: I understand that. I understand that. But, didn't he tell you that, just let me finish the question.

and compelling reason for leaving. *Fontana v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 274, 454 A.2d 678 (1983), and our scope of review includes errors of law. *Id.* Moreover, medical problems may provide a cause of a necessitous and compelling nature. *Findora v. Unemployment Compensation Board of Review*, 47 Pa. Commonwealth Ct. 301, 407 A.2d 938 (1979). And the claimant has an obligation to communicate these problems to the employer, *Elshinnawy v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 597, 317 A.2d 332 (1974), which he clearly did here, and to offer competent evidence that the health problems do exist and will justify termination. *Steffy v. Unemployment Compensation Board of Review*, 499 Pa. 367, 453 A.2d 591 (1982). Because the medical

---

Didn't he tell you that [the foreman] had said that the meeting with [the production manager, the foreman and the vice-president] had produced the decision that there was no work available?

AEW1: Yes.

QCL: All right. Now, why didn't you tell Mr. Gennaria that you were in that meeting?

AEW1: Because I didn't feel it was necessary at that point.

It is clear from this testimony that the personnel manager was present at the meeting and that even he was aware of the lack of work.

[3] The personnel manager also testified that the claimant's note from the doctor should have been sufficient for a leave of absence.

QCL: Did you at any time suggest to Mr. Gennaria that he would require another leave of absence?

AEW1: No, I did not.

QCL: Didn't you consider the doctor's statement that he brought in on the 9th of March sufficient to constitute a leave of absence if there was no work available?

AEW1: If there was no work available. Yes.

[4] The Board's finding that the claimant quit, actually a conclusion of law, is questionable on the facts presented; for the sake of argument, however, we will accept it as true.

certificate presented here satisfies this requirement, it is clear that the claimant has met his burden.

In *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 130-1, 451 A.2d 1353, 1356 (1982), the Supreme Court stated:

> Where an employee because of a physical condition, can no longer perform his regular duties, he must be available for suitable work, consistent with the medical condition, to remain eligible for benefits. However, *once he has communicated his problem to the employer and explained his inability to perform the regularly assigned duties, an employee can do no more.* The availability of an employment position, the duties expected to be performed by one serving in that capacity, and the desirability of that individual for service in that capacity are managerial judgments over which the employee has no control. As long as the employee is available where a reasonable accommodation is made by the employer, that is not inimicable to the health of the employee, the employee has demonstrated the good faith effort to maintain the employment relationship required under the Act. (Emphasis added.)

The employer's representatives testified that suitable work was not available, and the claimant had clearly met the requirements of communicating his medical problem to his employer and offering competent evidence of that problem. Accordingly, in light of *Genetin*, we believe that the Board erred in imposing additional requirements upon the claimant, and we will reverse its order and remand for the computation of benefits.[5]

---

[5] There is no dispute as to the claimant's availability for suitable work. *Cf. Genetin.*

ORDER

AND, Now, this 5th day of July, 1983, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed and the matter remanded for computation of benefits.

Jurisdiction relinquished.