260

County of Fayette, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Joan L. Snyder, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued May 1, 1984, before President Judge CRUM-
LISH, JR. and Judges WILLIAMS, JR., CRAIG, MACPHAIL,
DOYLE, BARRY and COLINS.

*Philip T. Warman,* County Solicitor, with him,
*Pamela J. Bailey,* for petitioner, County of Fayette.

*Wallace C. Worth, Jr., Worth Law Offices, P.C.,*
for petitioner, Joan L. Snyder.

*Daniel R. Schuckers,* Deputy Attorney General,
with him, *Allen G. Warshaw, David H. Allshouse* and

*Charles Hasson,* Deputy Attorneys General, and *Le-Roy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, July 31, 1984:

These two consolidated appeals address chiefly the question of whether court-appointed employes who resign or are discharged for seeking public office have good cause for their conduct, thereby entitling them to unemployment compensation benefits. We present each case's factual and procedural history separately, followed by our resolution of the questions of law.

## *No. 2481 C.D. 1981*

The County of Fayette appeals from an order of the Unemployment Compensation Board of Review which affirmed a referee's decision granting benefits to Richard A. Hoch.

After appointment by the Court of Common Pleas of Fayette County, Hoch had served as the county's assistant probation officer for approximately five years. On March 6, 1981, Hoch filed a nominating petition for the elective office of district justice. On March 10, 1981 the common pleas court notified him that directives of the Court Administrator prohibited him, as a court-appointed employe, from seeking political office, and offered him the choice of resigning or withdrawing from the race. On March 25, 1981, Hoch informed the court that he would do neither. On March 30, 1981, the court discharged him.

Hoch moved to dismiss the county's appeal from the Office of Employment Security's (OES) initial determination granting benefits, on the ground of the county's failure to attend the referee's hearing.[1] After

---

[1] Hoch contends that the referee erred in not granting his dismissal motion because of the county's nonappearance at the hearing. However, that issue was not preserved for review because there was

receiving a "cautionary instruction" from the referee, however, Hoch presented his case. Upon finding that Hoch had been terminated for filing the nomination petition and concluding that his action did not constitute wilful misconduct, the referee affirmed the OES's determination. The county has appealed the board's summary affirmance of the referee's decision.[2]

Undisputed evidence in the record clearly established that, by March 10, 1981, Hoch was aware of the judicial rule proscribing political activity, but that, despite such knowledge, he refused to withdraw his nominating petition or resign. The board candidly admits in its brief that the findings were inaccurate because Hoch was in fact discharged for refusing to withdraw—and not for filing—his nomination petition.

## No. 2385 C.D. 1983

Joan L. Snyder has appealed a board order which affirmed a referee's decision denying benefits because she voluntarily quit work without necessitous and compelling reason.[3]

For almost twelve years, Snyder had been employed as a secretary in a district justice's office. In early March 1983, she filed a nominating petition for the elective office of district justice. On March 15, 1983 the magisterial district administrator informed her that as a court-appointed employe she was pro-

---

no cross-appeal from the board's decision. *See Saloon Restaurant Enterprises v. W.C.A.B. (Martinez)*, 75 Pa. Commonwealth Ct. 408, 462 A.2d 337 (1983).

[2] As the employer, the county must prove that the claimant was discharged for wilful misconduct under section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). *See Meale v. Unemployment Compensation Board of Review*, 70 Pa. Commonwealth Ct. 412, 453 A.2d 376 (1982).

[3] Section 402(b) of the Law, 43 P.S. §802(b).

hibited from seeking public office, and offered her the option of resigning or withdrawing from the race. After considering the employer's ultimatum for a few days, she elected to pursue public office and resigned from employment on March 18, 1983.

Claimant Snyder, of course, has the burden of establishing that she had necessitous and compelling cause for leaving work. *See Gennaria v. Unemployment Compensation Board of Review*, 75 Pa. Commonwealth Ct. 354, 461 A.2d 918 (1983).

Snyder asserts that her resignation was not voluntary because she was compelled to resign in order to seek public office. The question of whether a claimant was discharged or voluntarily terminated the employment is ultimately one of law. *See G.C. Murphy Company v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 464, 471 A.2d 1295 (1984). Unlike constructive discharge cases, however, claimant Snyder was never confronted with a Hobson's choice to resign or be fired. *See e.g., Store Equipment Company, Inc. v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 80, 430 A.2d 1025 (1981). She simply chose to quit work in order to pursue her candidacy for the office of district justice. Her resignation was a deliberate rejection of the employment conditions that proscribed her candidacy.

Therefore, the board properly concluded that she had voluntarily terminated her employment. *See G.C. Murphy Company* (employe's refusal to return to work and relinquish right of action against employer constituted a voluntary quit).

### Good Cause

Our Supreme Court, in *In Re Prohibition of Political Activities by Court-Appointed Employees*, 473 Pa.

554, 560, 375 A.2d 1257, 1259-60 (1977) (per curiam), articulated the reasonableness of the political activity ban here involved, by stating:

The purpose of the memoranda, of course, was to maintain not only the independence, integrity and impartiality of the judicial system but also the appearance of these qualities. The vice of mixing political and judicial activity is too obvious to require elaboration here. Only by a steadfast separation of partisan political activity from the judicial function can the confidence of the public in courts and judges be merited and maintained.

However, even though the court rule proscribing political activity by court personnel is clearly reasonable, the claimants in both of these cases urge that we further must determine whether they had good cause for their respective actions. Claimant Hoch would not be guilty of wilful misconduct, even for contravening a reasonable rule, if good cause existed for the refusal to comply. *Lowe v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 485, 460 A.2d 870 (1983). Also, because "good cause" is equivalent to "necessitous and compelling" cause, *Kleban v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 540, 459 A.2d 53 (1983), a like analysis is pertinent to claimant Snyder's voluntary quit issue.

Both claimants assert that good cause underpinned their conduct in view of their reliance upon sections 410 and 412 of the Ethics Law,[4] enacted after the issuance of the Court Administrator's directives. Section 410 of the Ethics Law explicitly permits common pleas court and district justice employes to "run for

---

[4] Act of October 4, 1978, P.L. 883, 65 P.S. §§410, 412.

and hold any elective office." Section 412 of the Ethics Law provides that "[i]f the provisions of this act conflict with any other statute, ordinance, regulation or rule, the provisions of this act shall control."

However, the provisions of the Ethics Law cannot provide a legal foundation for good cause with respect to these court employees. The Pennsylvania Supreme Court has already held provisions of the Ethics Law invalid to the extent that they invade upon its own authority to administer the courts. Because the Supreme Court's power to supervise the judicial system is not subject to legislative regulation, Ethics Law provisions infringing upon that power are unconstitutional. *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980) held that the Ethics Law provision suspending a former judge's right to practice law was unconstitutional as applied. *Kremer v. State Ethics Commission,* Pa. , 469 A.2d 593 (1983) held that the Ethics Law financial disclosure provisions could not validly be applied to the judiciary.

In *Novalski v. Barbieri,* 487 Pa. 589, 410 A.2d 768 (1980) the conflict between the Ethics Law and the judicial directives against court employee political activity apparently was placed at issue. Although the Pennsylvania Supreme Court issued a decision against the court employee without any explanatory opinion (see dissenting opinion of Justice, now Chief Justice, Nix), the holding in that case controls the present case implicitly.

The Ethics Law provisions do not provide a good-cause basis for an award of unemployment compensation here.

### First Amendment

The final issue raised, that the judicial directives against political activity violate First Amendment rights, is answered by the express words of the Penn-

sylvania Supreme Court in *In Re: Prohibition of Political Activities,* where the Supreme Court explicitly considered claims of First Amendment and equal protection violations and found them to be without merit. Even though incumbency in public employment does not strip a citizen of constitutional rights, public agency employers can have a compelling governmental interest warranting restriction of a First Amendment right. *Commonwealth ex rel. Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973).

This court therefore must hold that neither of the claimants in these cases were entitled to unemployment compensation and enter the respective orders accordingly.

### Order in 2481 C.D. 1981

Now, July 31, 1984, the order of the Unemployment Compensation Board of Review at Decision No. B-199273 is reversed.

### Order in 2385 C.D. 1983

Now, July 31, 1984, the order of the Unemployment Compensation Board of Review at Decision No. B-221053 is affirmed.

---

Dissenting Opinion by Judge Williams, Jr.:

I respectfully dissent.

Sections 410 and 412 of the Ethics Law[1] are cloaked with the presumption of constitutionality. These "good-cause" provisions—absent judicial invalidation or legislative repeal—permit and justify claimants' candidacies. By concluding simply that the Ethics Law does not provide good cause, the majority fails to first adjudicate the constitutionality of Sections 410 and

---

[1] Act of October 4, 1978, P.L. 883, 65 P.S. §§410 and 412.

412. The majority's invocation of *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980) and *Kremer v. State Ethics Commission,* Pa. , 469 A.2d 593 (1983), which held unconstitutional Ethics Law provisions *other* than the "good-cause" sections, is insufficient. Judicial respect for the legislature, a co-equal governmental branch, mandates resolution of the constitutional question; and, an express determination that Sections 410 and 412 "clearly, palpably, and plainly violate the constitution"[2] is necessary before statutory "good-cause" is negated. No such express holding was rendered here; accordingly, the "good-cause" provisions remain the law in the Commonwealth.

Nor does *Novalski v. Barbieri,* 487 Pa. 589, 410 A.2d 768 (1980) "implicitly" control this case. By a sparse, seven word order that read "Petition Denied. Stay previously granted is vacated", our Supreme Court denied a writ of prohibition sought by traffic court employes to prevent their removal from active employment status while seeking elective office.

In a prescient dissent, Justice (now Chief Justice) Nix chastised the majority for entering a naked, unexplained, "jurisprudentially unsound" and "ambiguous order" which failed to resolve (1) whether a writ of prohibition can restrain a court's administrative rather than judicial power; and (2) whether Sections 410 and 412 were constitutional. Given the absence of an explanatory opinion setting forth the specific rationale for the denial of the writ of prohibition, the majority's reliance on *Novalski* is perplexing and misguided. Without benefit of a reasoned opinion it is impossible to ascertain the grounds on which the writ of prohibition was refused. Consequently, *Novalski*

---

[2] *Wajert,* 491 Pa. at 262 n. 6, 420 A.2d at 442 n. 6.

does not eliminate statutory "good-cause" for awarding unemployment benefits.

In addition to the statutory permission and protection provided by the Ethics Law, seeking political office is a form of political expression and association protected by the First and Fourteenth Amendments of the United States Constitution as a fundamental interest. *Commonwealth ex rel. Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973). The majority disposes of claimants' constitutional argument upon concluding properly that the "no-politics" rule validly serves compelling governmental interests. *See In Re: Prohibition of Political Activities,* 473 Pa. 554, 375 A.2d 1257 (1977) (per curiam). This initiates rather than terminates the inquiry, however, for

> the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the State is justified in reinforcing that decision by denying benefits . . . for the complained of conduct. (Footnotes omitted.)

*Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 86, 351 A.2d 631, 634 (1976).

The issue, therefore, is not whether the "no-politics" rule is constitutional, but whether the denial of unemployment benefits to claimants who, when compelled to choose between employment and candidacy, pursued elective office, impermissibly restrained their exercise of First Amendment rights of political expression and association. In *G.C. Murphy Company v. Unemployment Compensation Board of Review,* 80 Pa. Commonwealth Ct. 464, 471 A.2d 1295 (1984), a claimant had good cause for quitting rather than relinquishing a right of action against her private employer for personal injury sustained during a strike. The Court stated:

Denying unemployment benefits to claimant because she voluntarily left employment in order to exercise her constitutional right to judicial remedy would clearly constitute . . . an impermissible restraint. Claimant would be forced to choose between her "day in court" and her job, with the result of selecting the former being the state-denial of benefits. Such a state-coerced choice would unduly burden claimant in the exercise of her constitutional right of access to the courts.

*Id.* at 470, 471 A.2d at 1298. *See also Wright v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 117, 404 A.2d 792 (1979) (denial of unemployment benefits to claimant who publicly criticized his executive branch employer and was dismissed improperly abridged free speech guarantee).

After having employed a constitutional "chill" analysis in unemployment compensation cases involving a private employer *(G.C. Murphy Co.)* and an executive branch public employer *(Wright),* the Court fails here to inquire whether the denial of unemployment benefits to judicial branch employes pursuing elective office impermissibly burdens their fundamental rights of political expression and association. Based on the principle of stare decisis I firmly believe that it does. If court employes are not to be specially shorn of constitutional protection this Court must examine the chilling effect benefit denial would have on claimants' First Amendment rights.

Accordingly, since claimants' pursuit of elective office is statutorily authorized, and the denial of unemployment compensation would unduly burden their exercise of First Amendment rights, I believe that claimants had good cause for their conduct and are therefore entitled to unemployment compensation.