509 Pa. 438 (1985)
502 A.2d 1232
Joan L. SNYDER, Appellant,
v.
COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.
Supreme Court of Pennsylvania.
Argued October 21, 1985.
Decided December 26, 1985.
*439 *440 Wallace C. Worth, Allentown, Marc S. Fisher, Easton, for appellant.
Richard F. Faux, Leroy S. Zimmerman, Atty. Gen., Michael B. Sutton, Deputy Atty. Gen., Harrisburg, for appellee.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION ANNOUNCING THE JUDGMENT OF THE COURT
FLAHERTY, Justice.
This case presents the questions of whether an administrative directive of this Court prohibiting all judicial employees from engaging in partisan political activities, including running for public office, is constitutional; whether this administrative directive prevails over a legislative enactment which contradicts the directive; and whether a court employee who resigns her position in order to run for public office may be said to have left her employment because of a "necessitous and compelling" reason which makes her eligible for unemployment compensation.
Joan Snyder was employed for almost thirteen years as a secretary in the office of District Justice of the Peace Edward Ernst of Lehigh County, when, in 1983, she decided to run for the elective office of District Justice of the Peace. The Magisterial District Administrator for Lehigh County informed Snyder that if she chose to continue her candidacy for public office, she would have to resign her position as a court employee. Snyder elected to continue her candidacy *441 for public office and resigned her position. After her resignation, she applied for unemployment compensation.
The Office of Employment Security denied her claim for benefits, and a referee affirmed the denial on the grounds that Snyder voluntarily quit her job, making her ineligible for benefits. Upon appeal from the referee's decision, the Unemployment Compensation Board of Review affirmed the referee's denial of benefits, also on the grounds that Snyder voluntarily resigned from her position. Commonwealth Court, en banc, affirmed, one judge dissenting. We granted allocatur to determine the validity of our administrative directives as against the contradicting provisions of a legislative enactment and to decide whether a court employee who resigned her position in the context of the facts of this case may be said to have voluntarily quit her job. For the reasons that follow, we affirm the Commonwealth Court.
On March 18, 1977 the Court Administrator of Pennsylvania sent to all judges and district justices of the peace in the Commonwealth one of several memoranda on the subject of political activities of district justices and court personnel. The March 18 memorandum stated:
This Supplemental Memorandum is a reminder to judges and district justices of the peace that they and their staffs must remain free from any political activity. Persons employed in sensitive positions in the court system must not engage in partisan politics. This would preclude law clerks, court administrators and secretarial employees from being committee-persons, working at the polls or running for public office.

(Emphasis added).
The next year the Pennsylvania legislature enacted the Ethics Act, Act of October 4, 1978, P.L. 883, No. 170, § 1, 65 P.S. 401 et. seq., which provides, in pertinent part:
Nothing in this act, or in any other law or court rule shall be construed to prohibit any constable or any employee of a court of common pleas, the Municipal Court of Philadelphia, the Traffic Court of Philadelphia, or any *442 employee of a district justice from also being an officer of a political body or political party as such terms are defined in the . . . "Pennsylvania Election Code," and the same may hold the office of a county, State or national committee of any political party, and may run for and hold any elective office, and may participate in any election day activities.
65 P.S. § 410. (Emphasis added). Section 412, entitled "Conflict of Law," states: "If the provisions of this act conflict with any other statute, ordinance, regulation or rule, the provisions of this act shall control." 65 P.S. § 412.
A plain reading of Section 410 of the Ethics act, supra, which permits court employees to participate in partisan political activity, indicates that the statute explicitly contravenes our directive of March 18, 1977 that court employees not participate in any form of partisan political activity. Our initial determination, therefore, must be whether the administrative directive of this Court proscribing court employees from engaging in partisan political activity supersedes and prevails over the provisions of Section 410.
The Pennsylvania Constitution assigns to the Supreme Court of Pennsylvania "general supervisory and administrative authority over all the courts and justices of the peace." Art V, § 10(a). The Constitution also grants this Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders. . . including . . . the administration of all courts and supervision of all officers of the Judicial Branch. . . ." Art V, § 10(c). This same subsection further provides: "All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions." Id.
We must first determine, therefore, whether the administrative directives of this Court are "general rules governing practice, procedure and the conduct of all courts," within the meaning of Art. V. § 10(c). Although an administrative directive concerning the internal functioning of the court system may be created by a different *443 procedure than are the rules which this Court promulgates in the form of Rules of Court, such directives, nonetheless, like Rules of Court, are issued under the supervision and with the full knowledge of the Court. They are, for all practical purposes, rules which apply to internal, housekeeping matters. We conclude, therefore, that the administrative directives of this Court have the full force and effect of "rules," as described in Art. V. § 10(c) of the Pennsylvania Constitution.
Having determined that our administrative directives have the force and effect of "rules," we conclude that Section 410 of the Ethics Act, supra, is suspended as applied to any person affected by this Court's directive forbidding partisan political activity. Pa. Const. Art. V, § 10(c).[*]
Snyder also claims, however, that our administrative directive unconstitutionally restricts her rights of political association as guaranteed by the First Amendment to the United States Constitution. We have already addressed this question in In re Prohibition of Political Activities by Court Appointed Employees, 473 Pa. 554, 375 A.2d 1257 (1977) and Commonwealth ex rel. Specter v. Moak, 452 Pa. *444 482, 307 A.2d 884 (1973). In In re Prohibition of Political Activities, we held that the March 18, 1977 memorandum from the Court Administrator of Pennsylvania, restricting partisan political activity of court appointed employees, does not violate the First Amendment. In Specter v. Moak we held that the restrictions of Section 10-107(5) of the Philadelphia Home Rule Charter, prohibiting city employees from running for elective public office, is a constitutionally permissible restriction under the First Amendment; and citing Wisconsin State Employees Association v. Wisconsin Natural Resources Board, 298 F.Supp. 339 (W.D.Wis. 1969), we expressed the view that "`the relinquishment of the right to run for partisan political office can constitutionally be made a condition of public employment.'" Id. 452 Pa. at 493, 307 A.2d at 890.
We also noted in that Opinion that the United States Supreme Court in United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), has upheld a provision of the Hatch Act which forbids employees of the executive branch from taking active part in the management of political campaigns. More recently, in United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the United States Supreme Court held that a law barring partisan political conduct by federal employees was constitutionally permissible. Finally, in Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the United States Supreme Court upheld the constitutional validity of a state statute prohibiting state employees from engaging in partisan political activity, including running for public office. Thus, it is plain, under the decisions of this Court and those of the United States Supreme Court, that the directive of this Court forbidding partisan political activity on the part of any court employee is constitutionally permissible.
Having determined that our directive prohibiting court employees from engaging in partisan political conduct is constitutionally sound and that the provisions of Section 410 *445 the Ethics Act are suspended as applied to court employees, we must now determine whether Snyder was eligible for unemployment compensation benefits upon her resignation from her position of secretary to a district justice.
Section 402 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess.P.L. (1937) 2897, Art. IV, as amended, 43 P.S. § 802, provides in pertinent part:
An employe shall be ineligible for compensation for any week 

* * * * * *
(b)(1) in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .
In Taylor v. Unemployment Compensation Board of Review, 474 Pa. 351, 378 A.2d 829 (1977), this Court observed that the meaning of "necessitous and compelling" has been developed by case law over the years. Id., 474 Pa. at 358, 378 A.2d at 832. In general, we observed that:
"good cause" for voluntarily leaving one's employment (i.e., that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.
Id., 474 Pa. at 358-59, 378 A.2d at 832-33.
Nothing in this Court's directive prohibiting partisan political activity on the part of court employees produced pressure for Snyder to terminate her employment. Rather, it was Snyder's desire to act in a way that was in conflict with this Court's lawful directive which caused her to resign from her position. When this Court defined "necessitous and compelling" cause for leaving work as "circumstances which produce pressure to terminate employment that is both real and substantial," it was never contemplated that the "circumstances" might be the employee's personal goals, aspirations or ambitions which conflicted with some reasonable policy or requirement of the employer.
*446 As individuals living in the world's greatest true democracy, we have the constitutional right to pursue personal goals and aspirations with a freedom which few, if any, other peoples enjoy. That we have such rights, however, does not impose an obligation on an employer to alter its reasonable work rules when they conflict with an employee's exercise of his right to pursue lawful personal goals and aspirations. Therefore, if an employee resigns from his employment because the pursuit of his personal goals and aspirations conflicts with the reasonable policies and/or regulations of his employer, the employee will not be heard to say that he was compelled to resign.
The order of Commonwealth Court is affirmed.
HUTCHINSON, J., files a concurring opinion.
McDERMOTT, ZAPPALA, JJ., concur in the result.
PAPADAKOS, J., files a dissenting opinion.
LARSEN, J., dissents and adopts the dissenting opinion of Commonwealth Court Judge Robert Williams in this case. See Fayette County v. Unemployment Compensation Board of Review, 84 Pa.Commw. 260, 479 A.2d 1153, 1157-58 (1984) (Williams, J., dissenting).
HUTCHINSON, Justice, concurring.
I concur in the result, but find it unnecessary to reach or discuss the delicate question whether this Court's administrative rule precluding employees of the judicial system from running for political office is paramount to a statute which would permit that activity.
Whether or not the rule remains valid in the face of the legislative enactment, this appellant chose to quit her employment without directly testing its validity. I am at a loss to see how she can now attack it indirectly in this unemployment compensation proceeding after she decided to quit.
Had the system terminated her employment for violation of the rule appellant might question the propriety of the *447 rule as a basis for discharge. Even in such a case the issue would not be the legal validity of the rule, but whether it was so unreasonable that the employee's refusal to obey it was not willful misconduct.
PAPADAKOS, Justice, dissenting.
I dissent. I am in agreement that the directive of this Court forbidding partisan political activity on the part of any court employee is constitutionally permissible, and that relinquishment of Appellant's right to run for partisan political office constitutionally could be made a condition of public employment. That determination, however, is not dispositive of the constitutional issue in this case. The Court has not answered nor even addressed the question of what compelling governmental interest is served by further burdening Appellant's fundamental right of political expression by denying Appellant unemployment compensation benefits. Appellant has established good cause for her "voluntary" termination of this particular position. Appellant did not voluntarily leave employment, she merely left this particular position as she was required to do in order to run for political office. However, she at all times remained in the labor market and available for suitable full-time work. Denying unemployment benefits to Appellant because she was compelled to leave this specific employment in order to exercise her First Amendment Right of political expression clearly constitutes an impermissible restraint. Appellant was required to choose between this job and candidacy. Such compulsion was properly justified on the basis of a compelling governmental interest. However, to deny her unemployment benefits unduly burdens Appellant in the exercise of First Amendment Rights.
In Commonwealth ex rel. Specter v. Moak, 452 Pa. 482, 307 A.2d 884 (1973), this Court stated:
. . . the governmental unit has the burden of showing that the restriction on the First Amendment activity is the least drastic means for achieving the governmental purpose. `In a series of decisions this Court has held that *448 even though the governmental purpose may be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.' Shelton v. Tucker, supra, 364 U.S. [479] at 488, 81 S.Ct. at [247] 252 [5 L.Ed.2d 231] . . .
Id., 452 Pa. at 490, 307 A.2d at 889.
As noted by Judge Robert W. Williams, Jr., in his dissent in County of Fayette and Joan L. Snyder v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review, 84 Pa.Commonwealth Ct. 260, 479 A.2d 1153 (1984) ". . . the issue is . . . not whether the `no politics' rule is unconstitutional, but whether the denial of unemployment benefits to claimants who, when compelled to choose between employment and candidacy pursued elective office, impermissibly restrained their exercise of First Amendment rights of political expression and association." The majority in framing the question as "whether a court employee who resigns her position in order to run for public office may be said to have left her employment because of a `necessitous and compelling' reason which makes her eligible for unemployment compensation," distorts the real issue. The Court fails to address the question of whether the denial of unemployment benefits to judicial employees pursuing elective office impermissibly burdens their fundamental rights of political expression and association. I believe that it does. If court employees are to be afforded the constitutional protection to which they are entitled, an analysis must be made as to the chilling effect that denial of benefits would have on claimant's First Amendment rights.
Setting aside the constitutional issue, the majority asserts that Appellant's termination of her employment was entirely voluntary and that nothing in the court's directive produced pressure for Appellant to terminate her employment. Therefore, the majority concludes that the requirement of *449 cause of a necessitous and compelling nature of 43 P.S. § 802(b)(1)[1] is not met. I firmly disagree.
Appellant, in the exercise of her fundamental right of political expression and association, decided to run for political office. As a result of her pursuit of this fundamental right, she was forced into a dilemma of either withdrawing her candidacy for district magistrate or resigning or being fired. A resignation under these circumstances cannot be considered to be voluntary within the purview of 43 P.S. § 802(b)(1). Especially where she remains able and available for any other suitable work. This Court discussed at length the statutory meaning of "voluntarily" in Taylor v. Unemployment Compensation Board of Review, 474 Pa. 351, 378 A.2d 829 (1977):
`Voluntarily' and `involuntarily' are anonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in `voluntarily,' but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties  these are circumstances that exert pressure upon him and imperiously call for decision and action.
When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have *450 compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment. (Emphasis in original, Footnote omitted.)
Id., 474 Pa. at 359-60, 378 A.2d at 833-34.
In the instant case, Appellant's decision to terminate her employment is voluntary in the sense that she willed it, but involuntary because outward pressures have compelled it.
The majority concludes that the "necessitous and compelling" cause requirement of 43 P.S. § 802(b)(1), as developed by case law over the years and which is defined as "circumstances which produce pressure to terminate employment that is both real and substantial," does not include the circumstances of the employee's personal goals, aspirations, or ambitions which conflict with some reasonable policy or requirement of the employer. When a person voluntarily terminates employment to accept a better position, that person has resigned from employment to pursue personal goals, aspirations, or ambitions which may conflict with the employer's reasonable policies and regulations. However, Unemployment Compensation Law has always found this voluntary resignation to be for a compelling and necessitous reason and has allowed compensation when the person has been laid off (i.e. for lack of work) from the new position even one week after starting the new position, or when there is a delay in beginning employment at the new position, Township of North Huntingdon v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, 69 Pa.Commonwealth Ct. 187, 450 A.2d 768 (1982); Steinberg v. Unemployment Compensation Board of Review, 34 Pa.Commonwealth Ct. 294, 383 A.2d 1284 (1978); Unemployment Compensation Board of Review v. Pennsylvania Power & Light Company, 23 Pa.Commonwealth *451 Ct. 220, 351 A.2d 698 (1976); Eckenrod v. Unemployment Compensation Board of Review, 15 Pa.Commonwealth Ct. 166, 325 A.2d 320 (1974).
The present situation is analogous to the above described voluntary resignation and meets the "necessitous and compelling" cause requirement of 43 P.S. 802(b)(1). Accordingly, Appellant should therefore be entitled to Unemployment Compensation benefits.
NOTES
[*] Such a conclusion is consistent with other recent decisions of this Court which have tended to invalidate legislative enactments insofar as they conflict with our rules or rule making authority. In Kremer v. State Ethics Commission, 503 Pa. 358, 469 A.2d 593 (1983), we held that the financial disclosure provisions of the Ethics Law as applied to judges of Commonwealth Courts infringe on our power to supervise courts and are, therefore, unconstitutional as applied to judges. In Wajert v. State Ethics Commission, 491 Pa. 255, 420 A.2d 439 (1980) we held that § 3(b) of the Ethics Law, prohibiting former judges from practicing before certain courts for one year after their resignation from a judicial post, was also invalid because it infringes upon this Court's exclusive power to supervise the conduct of attorneys. In In Re 42 Pa.C.S. § 1703, 482 Pa. 522, 394 A.2d 444 (1978) we held that the Open Meeting Law was unconstitutional as applied to the rule making function of the judicial branch because the rule making function is within this Court's exclusive control and supervision. Finally, in In re Prohibition of Political Activities by Court Appointed Employees, 473 Pa. 554, 375 A.2d 1257 (1977), dealing with the same memoranda as are involved in this case, we held that this Court's administrative directives prohibiting partisan political activity were not violative of the First Amendment or the Equal Protection Clause of the Constitution of the United States, that these directives were issued with the full knowledge of this Court, and that the directives were affirmed.
[1] 43 P.S. § 802 provides in pertinent part:

An employee shall be ineligible for compensation for any week. . .
(b) 1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . .