420 A.2d 439

**The Honorable John M. WAJERT, Judge of the Court of Common Pleas, in and for Chester County, 15th Judicial District, Appellee,**

v.

**STATE ETHICS COMMISSION, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 22, 1980.

Decided Sept. 22, 1980.

David Rittenhouse Morrison, Harrisburg, for appellant.

John M. Wajert, West Chester, for appellee.

Harris Goldrich, Raymond Pearlstine, Norristown, for amicus curiae Pa. Bar Assn.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

On March 12, 1979, the Honorable John M. Wajert, Judge of the Court of Common Pleas of Chester County, acting pursuant to Sections 7(9)(i) and (ii) of the State Ethics Act,[1]

---

1. Act of October 4, 1978, P.L. 883, No. 170, § 1 *et seq.*, 65 P.S. § 401 *et seq.* (Supp.1980–81) [hereinafter:  65 P.S. § ——].

requested an opinion from the State Ethics Commission. The issue presented to the Commission was:

"May a Judge of a Court of Common Pleas, upon retirement or resignation, represent a client before that Court within the first year after such resignation."

On May 11, 1979, the Commission responded to the request as follows:

"It is the Commission's Opinion that a Common Pleas Judge is barred by Section 3(e) of the Act from representing any person before the Court with which he was associated for a period of one year following resignation or retirement." *Wajert*, Opinion 1978–5.

On May 29, 1979, Judge Wajert filed a Petition for Declaratory Judgment in Commonwealth Court seeking, *inter alia*, a declaration the Act, 65 P.S. § 401 *et seq.*, in its application to judges and justices of the courts of the Commonwealth of Pennsylvania was unconstitutional and of no force and effect.[2] On October 30, 1979, the Commonwealth Court, 407 A.2d 125, dismissed preliminary objections to the petition filed by the Ethics Commission. On November 27, 1979, the Commission consented to the entry of a final judgment in favor of the petitioner but specifically reserved its right to appeal from the judgment. On November 28, the Commonwealth Court entered a final judgment ruling Section 3(e) of the State Ethics Act, 65 P.S. § 403 (e), to be of no force and effect to judges of the Courts of Common Pleas in the Commonwealth of Pennsylvania. The Commission then filed this appeal.

Section 3(e) of the Ethics Act, 65 P.S. § 403(e), provides: "No former official or public employee shall represent a person, with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body."

2. Acting pursuant to Pa.R.A.P. 1503, the Commonwealth Court directed that the Petition for Declaratory Judgment be regarded and acted upon as a petition for review addressed to that court's original jurisdiction. 42 Pa.C.S.A. § 761(a).

Section 2 of the Act, 65 P.S. § 402, defines the term "public official" to include any elected or appointed official in the judicial branch of the State or any political subdivision thereof and the term "governmental body" as:

> "Any department, authority, commission, committee, council, board, bureau, division, service, office, officer, administration, legislative body, or other establishment in the Executive, Legislative or Judicial Branch of the State or a political subdivision thereof."

In its opinion filed in support of the judgment, the Commonwealth Court reasoned that a judge who retired or resigned from his judicial office was clearly a "public official"; that the proscription of 65 P.S. § 403(e) would apply to such an individual if a court of law was a "governmental body"; but, that a court of law was not within the definitional purview of "governmental body." The court explained that a court of law was not explicitly included within the definition of "governmental body"; that, since such a court was not explicitly included, the legislature could have intended it to be within the definitional purview of the term only if it was an "establishment in the . . . Judicial Branch of the State"; that whether a court was intended to be such an "establishment" was unclear because no similar nomenclature so referring to a court could be found; that, given this uncertainty, the legislative intent had to be determined by considering, *inter alia, see* 1 Pa.C.S.A. § 1921(c), the purpose of the statute and the presumption that the legislature did not intend to violate the constitution, *see* 1 Pa.C.S.A. § 1922(3); that the primary purpose of the statute was to expose and prevent real and potential conflicts of interests; that, given the fact that the Code of Judicial Conduct and the Code of Professional Responsibility address themselves to "the same mischief", the statute was not intended to proscribe the activities of judges and former judges of the Courts of Common Pleas; and, that a contrary construction of the statute would render it unconstitutional because it would result in the statute being a "direct restriction upon the practice of law" and, hence, an improper

usurpation of the exclusive power of the Supreme Court of Pennsylvania to regulate the practice of law.

While we consider the Commonwealth Court's effort to interpret this statute in such a way as to avoid declaring it unconstitutional when applied to a former judge laudable in light of the presumption that the legislature does not intend to violate the constitution, we are constrained to disagree with that court's interpretation of the statute. We are persuaded the statute was intended to apply to former judges, but, when so interpreted, it is unconstitutional.

■ The mere fact that a court of law has not previously been referred to as an "establishment in the . . . Judicial Branch of the State" does not render the term "establishment" unclear or ambiguous so that resort to the factors of 1 Pa.C.S.A. § 1921(c) is required. Otherwise, every time the legislature utilized a new term, it would have to be considered unclear and ambiguous. The words of the English language are not unclear and ambiguous simply because the legislature has not previously used them; rather, in such circumstances, the word or term must first be examined according to its common and approved usage. 1 Pa.C.S.A. § 1903(a); *Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978).

■ The term "establishment" is defined in Webster's New International Dictionary (2d 1959) as a place of business or as that which is established, *i.e.* secured in permanent existence. Undoubtedly, the courts are secured in permanent existence and are places of business, *i. e.* public business. Moreover, if a court of law is not an "establishment . . . in the Judicial Branch," one would be hard pressed to determine what the legislature was attempting to include.

Finally, that the Legislature intended to include a court of law as a "governmental body" is made abundantly clear when 65 P.S. § 406 is examined. That section establishes

the State Ethics Commission and its membership. Then in (d) it provides:

"No individual, while a member or employee of the commission, shall:

.        .        .        .        .

(4) directly or indirectly attempt to influence any decision by a governmental body, *other than a court of law ....*" [Emphasis added.]

Obviously, specifically exempting a court of law from the term "governmental body" in this section would be absurd if it is not otherwise included within the term. Of course, we cannot interpret legislative pronouncements in an absurd manner. 1 Pa.C.S.A. § 1922(1).

Thus, we must conclude a court of law is a "governmental body".[3] Moreover, since we agree with the Commonwealth Court's interpretation that the term former "public official" includes a judge who has retired or resigned,[4] in our view, 65 P.S. § 403(e) clearly applies to judges of the Courts of Common Pleas who have resigned or retired.

■■■■ Having determined the statute is applicable, we are constrained to hold it unconstitutional insofar as it is applicable to a former judge.[5] In essence, we agree with the

**3.** Even were we to conclude a court of law is not an "establishment," we would be hard pressed to explain why it is not an "office" within the definition of "governmental body."

**4.** Indeed, petitioner–appellee concedes this point and the Commission so argues.

**5.** We are not unmindful that the reasons set forth infra for our ruling strongly suggest the statute is also unconstitutional in application to attorneys who seek to practice in Pennsylvania's courts. We need not now so rule and explicitly refrain from doing so, but feel compelled to point out our conscious consideration of the possible breadth of our ruling. Such consideration is essential, since, given our interpretation of the statute and its application to courts of law and its possible application to law clerks, *see* 65 P.S. § 402, the courts of this Commonwealth might be effectively precluded from employing law school graduates as law clerks because persons would fear such employment would prohibit them from practicing before the court by which they were employed for one year after the termination of their employment.

Commonwealth Court's reasoning that application of this statute to a former judge constitutes an infringement on the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth. Long before the Ethics Act was enacted, this Court adopted the Code of Professional Responsibility enunciating the standards governing the professional conduct of those engaged in the practice of law in this Commonwealth. In the rules enforcing that Code, this Court had made it abundantly clear that supervising the conduct of an attorney, including that of a former judge, before the courts of this Commonwealth was a matter exclusively for this Court. Pa.R.D.E. 103 states:

"The Supreme Court declares that it has inherent and *exclusive* power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which shall supersede all other court rules and statutes pertaining to disciplinary enforcement heretofore promulgated." [Emphasis added.]

■ There can be no doubt that the statute has infringed on this Court's *exclusive* power to govern the conduct of an attorney, and is, hence, unconstitutional.[6] Moreover, that power has been specifically exercised to deal with the mischief the statute attempts to address. DR 9–101(A) of the Code of Professional Responsibility prohibits a lawyer from accepting private employment in a matter upon the merits of which he acted in a judicial capacity. *See also* DR 9–101(B) and (C).

Order affirmed.

**6.** Our determination is made in accordance with the well–established rule that a statute must be shown to clearly, palpably, and plainly violate the constitution.. *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780 (1977); *In re William L.,* 477 Pa. 322, 383 A.2d 1228 (1978); *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975); *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963).