605 A.2d 1193

**Evan E. LLOYD, Esquire and Leslie
D. Michel, Esquire, Appellees,**

**v.**

**Ralph T. FISHINGER and Rosemary
Fishinger, his wife, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1991.

Decided March 10, 1992.

514

Paul G. Kachulis, Pittsburgh, Pa., for appellants.

John G. Arch, Gregory Whitney, Pittsburgh, Pa., for appellees.

John A. Caputo, John A. Caputo & Associates, Pittsburgh, Pa., for amicus curiae Pennsylvania Trial Lawyers Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADOKAS and CAPPY, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Superior Court is AFFIRMED.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

CAPPY, J., files an Opinion in Support of Affirmance.

FLAHERTY, J., files an Opinion in Support of Reversal in which NIX, C.J., and McDERMOTT, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

CAPPY, Justice.

This case presents an issue involving the constitutional doctrine of separation of powers. Specifically, may the legislature prescribe rules directly affecting the conduct of attorneys in this Commonwealth, when the Pennsylvania Constitution at Article V, Section 10, has expressly delegated the authority to oversee the conduct of lawyers to the judiciary.

The question posed to this Court arises from the efforts of the appellants to dismiss the appellees from acting as their legal counsel in a personal injury action. Ralph Fishinger, the appellant, was seriously injured in a motorcycle accident occurring on June 6, 1987. As a result of the accident Mr. Fishinger underwent amputation of part of one leg, and remained hospitalized for one month. On June 8, 1987, two days after the accident, the appellee, attorney Lloyd arrived at the hospital to discuss a contingent fee agreement with Mr. Fishinger, whereby Mr. Lloyd would provide legal representation for Mr. Fishinger as a result of any claim arising from the accident. Mr. Fishinger signed the agreement at that time.[1] Prior to visiting Mr. Fishinger, attorney Lloyd had been to the Fishinger home, where he obtained Mrs. Fishinger's signature on the contingent fee agreement, to represent her interests as a result of her husband's accident.[2]

1. Mr. Fishinger does not contest that it is his signature on the agreement. However, he asserts that he has no recollection of signing the agreement as at the time he was heavily sedated and deeply depressed upon learning that his leg had to be amputated. Mr. Fishinger, thus, questions his ability to enter into a contract at the time he signed the contingent fee agreement. [Deposition of Mr. Fishinger at pp. 7–9].

2. Mrs. Fishinger stated that she did not understand the intent of the contingent fee agreement, only that it was something necessary to help her husband. [Deposition of Mrs. Fishinger at p. 27].

Upon being released from the hospital on July 9, 1987, Mr. Fishinger called attorney Lloyd and told him that his services were not wanted. Attorney Lloyd requested written verification of dismissal. Mr. Fishinger instructed his new counsel to provide written verification. Attorney Lloyd then insisted upon written verification by Mr. and Mrs. Fishinger, who promptly complied with that request. Attorney Lloyd then filed a complaint against the Fishingers in contract to enforce the contingent fee agreement, with an alternative count in equity for quantum meruit.[3]

The Fishingers filed preliminary objections to the complaint alleging the invalidity of the contingent fee agreement on the basis of 42 Pa.C.S. § 7101(a)(3), entitled **Settlements and other agreements with hospitalized persons,** which provides in pertinent part:

> Where a person is injured and confined as a patient to a hospital or sanitarium due to such injuries, no attorney shall, during the first 15 days of the confinement of such patient, enter or attempt to enter into an agreement relating to compensation wholly or partly on a contingent basis with such patient in connection with his injuries.

The trial court sustained the preliminary objections and dismissed the entire complaint. The Superior Court reversed and remanded the order of the trial court, holding that the statute was an unconstitutional infringement by the legislature upon the express power of the judiciary to prescribe rules of conduct for attorneys in Pennsylvania. 380 Pa.Super. 507, 552 A.2d 303. This Court granted allocatur to review the question of the constitutionality of this

---

**3.** Mr. Fishinger had been injured by the negligence of a third party. The insurance carrier for the third party had offered the $100,000 limit of the policy to the Fishinger's. Attorney Lloyd in his complaint was seeking 37.5% of that amount plus recovery of expenses in accordance with his contingent fee agreement.

We note that the contingent fee agreement does not clarify whether the expenses are to be in addition to the fee or to be deducted from the fee, as required by Rule 1.5(c) of the Rules of Professional Conduct. This provision was also contained in Ethical Consideration 2–19, accompanying the rules of Professional Responsibility, which were in effect at the time this particular agreement was executed.

legislative enactment.[4]  For the following reasons we affirm the decision of the Superior Court.

Article V, Section 10(c) of the Pennsylvania Constitution distinctly delineates the authority of the judiciary, providing in pertinent part:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, *and for admission to the bar and to practice law*, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.  All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.  (emphasis supplied).

**4.** The dissent points out that it is the practice of our Court to elicite the advice of the Attorney General prior to reviewing the constitutionality of a statute.  *See,* Pa.R.C.P. 235.  However, in making this point the dissent fails to include the last two lines of Rule 235 which state:

> The court in its discretion may stay the proceedings pending the giving of the notice and a reasonable opportunity to the Attorney General to respond thereto.  If the circumstances of the case require the court may proceed without prior notice in which event notice shall be given as soon as possible; or the court may proceed without waiting action by the Attorney General in response to a notice.

Obviously, the Rule contemplates action by this Court in the absence of notice to the Attorney General when, as in the case at bar, an issue of public importance requires prompt resolution.  Further, it should be noted that the question of notice is here being raised sua sponte by the dissent.  We will leave to another day the debate over who has standing to raise the question of whether Rule 235 can be invoked to bar an appeal on a constitutional issue.  *Commonwealth v. Stein,* 487 Pa. 1, n. 5, 406 A.2d 1381, n. 5 (1981).

In *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980), this Court made clear that it holds the exclusive power to govern the conduct of attorneys in Pennsylvania. Wajert was a former judge, who, upon leaving the bench in the Court of Common Pleas, sought to resume his legal practice. He was informed by the State Ethics Commission that he would be prohibited from representing any clients before the Court of Common Pleas from which he had resigned for a period of one year. *See,* Section 3(e) of the State Ethics Act, Act of October 4, 1978, P.L. 883, No. 170, § 1; 65 P.S. § 403(e). This Court held that the "application of this statute to a former judge constitutes an infringement on the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth." *Id.,* 491 Pa. at 262, 420 A.2d at 442.

The statute was declared inapplicable to Wajert as a violation of the doctrine of separation of powers. The same statute was held inapplicable, for the same reason, to former attorney employees of the Public Utility Commission in *Pennsylvania Public Utility Commission Bar Association v. Thornburgh,* 498 Pa. 589, 450 A.2d 613 (1982).[5]

In a rather unusual format, this Court crystallized the importance of the doctrine of separation of powers in *In re 42 PA.C.S. § 1703,* 482 Pa. 522, 394 A.2d 444 (1978), *petition for leave to file petition for mandamus denied, Kubert v. The Supreme Court of Pennsylvania,* 440 U.S. 905, 99 S.Ct. 1269, 59 L.Ed.2d 487 (1979). The Legislature had enacted, and the Governor had approved, a provision of the Public Agency Open Meeting Law, 42 Pa.C.S. § 1703, which would require this Court to hold sessions open to the public while exercising its rule-making powers. In an open

---

**5.** In *Maunus v. Commonwealth State Ethics Commission,* 518 Pa. 592, 544 A.2d 1324 (1988), the requirement of the State Ethics Act that public employees file financial disclosure forms was held applicable to attorney public employees and not violative of this Court's authority to govern the conduct of attorneys. The fact that the attorneys had chosen employment within the public domain was found to be the controlling distinction, along with the fact that the requirement was not one already provided within the rules of professional conduct.

letter to the executive and legislative branches, this Court emphatically expressed its view that provision was unconstitutional:

> While the separation of powers doctrine does not "contemplate total separation of [the] three ... branches of Government," *Buckley v. Valeo,* 424 U.S. 1, 104, 96 S.Ct. 612, 675, 46 L.Ed.2d 659 (1976), the existence of appropriate overlap between branches with respect to some functions of government does not mean that such overlap is appropriate with respect to all functions. The Pennsylvania Constitution grants the judiciary—and the judiciary alone—power over rule-making. In enacting Section 1703, the General Assembly has attempted to assume some of that power, but to our minds, the arguments justifying that attempt are inadequate in light of doctrines developed in this and other jurisdictions. We conclude, in sum, that Section 1703 simply cannot be reconciled with the constitutional scheme of the Commonwealth of Pennsylvania.

*In re 42 PA.C.S. 1703* at 534, 394 A.2d at 451.

■ At its original conceptualization, the theory of separation of powers was to prohibit tyranny by creating a system within which no one branch of government would hold all the reins of power. *See, The Federalist No. 47* (J. Madison). Admittedly, the threat of tyranny is not as active a concern today as it was at the birth of our State and Federal Constitutions. However, the principles upon which we developed three separate branches of government, each with its own field of expertise and dominion, are still to be strictly followed.

The Supreme Court in this Commonwealth is empowered by the Pennsylvania Constitution to govern the conduct of attorneys practicing law within the Commonwealth. In furtherance of that authority, this Court has enacted rules of professional conduct. At present, **Rule 7.3 Direct Contact with Prospective Clients,** prohibits the actions taken by attorney Lloyd in the instant case. Although Rule 7.3 was not in effect at the relevant time herein, its predeces-

sor, DR 2–103, was in full force and effect, and contained the same prohibition.

In our serious task of overseeing ethical conduct within the bar, this Court is not unaware of the evils involved in direct solicitation of clients by attorneys. Those inherent evils were succinctly summarized by the United States Supreme Court in *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978): "The substantive evils of solicitation have been stated over the years in sweeping terms; stirring up litigation, assertion of fraudulent claims, debasing the legal profession, and potential harm to the solicited client in the form of overreaching, overcharging, underrepresentation, and misrepresentation." *Id.* at 461, 98 S.Ct. at 1921.

■ The aversion of this Court for the conduct of attorney Lloyd described in this case, however, cannot be a reason to uphold an unconstitutional infringement by the legislature upon the exclusive power and authority of this Court. Rules of conduct disapproving direct solicitation have always been part of this Courts disciplinary focus. As 42 Pa.C.S. § 7101(a)(3) is a clear attempt by the legislature to enact rules of conduct in an area exclusively within the province of this Court that section of the statute is unconstitutional.[6]

The decision of the Superior Court is affirmed. This case is hereby remanded to the trial court for further proceedings consistent with this opinion.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

We all agree—the public, the legislature, the bar, and the Supreme Court of Pennsylvania—that the actions of attorney Lloyd were blatantly improper. I therefore believe it

---

6. Although we find that the trial court incorrectly granted preliminary objections on the basis of the statute at issue, we make no finding as to whether or not the complaint states a cause of action.

was correct for the trial court to dismiss Lloyd's complaint on preliminary objections.

We should unequivocally and emphatically condemn the conduct of attorney Lloyd rather than making a negative reference that "we by no means condone" it, as the Superior Court did, or expressing obliquely our "aversion" to Lloyd's conduct, as the plurality does. There is no doubt that Lloyd transgressed 42 Pa.C.S. § 7101(a)(3), which states:

**§ 7101. Settlements and other agreements with hospitalized persons**

**(a) General rule.—**

(3) Where a person is injured and confined as a patient to a hospital or sanitarium due to such injuries, no attorney shall, during the first 15 days of the confinement of such patient, enter or attempt to enter into an agreement relating to compensation wholly or partly on a contingent basis with such patient in connection with his injuries.

As the plurality points out, the Code of Professional Conduct in effect in 1987 prohibited the actions taken by attorney Lloyd. Unfortunately, one must read between the lines to perceive the prohibition. DR 2–103(A) states:

**DR 2–103. Recommendation of Professional Employment**

(A) A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer.

I read 42 Pa.C.S. § 7101(a)(3) as an amplification of our regulation of attorney conduct set forth in DR 2–103(A), not as a usurpation of our exclusive prerogative of regulating the practice of law.

This court has stated: "We must presume that an Act of the legislature is intended to be constitutional and wherever a legislative act can be preserved from unconstitutionality it must be preserved." *Hughes v. Commonwealth Dep't of*

*Transportation*, 514 Pa. 300, 307, 523 A.2d 747, 750–51 (1987); see also 1 Pa.C.S. § 1922(3); *Hayes v. Erie Ins. Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981). I see no compelling need to declare the statute unconstitutional when it is consistent with our regulation of attorney conduct and merely explains our disciplinary rule.

Furthermore, I perceive the thrust of 42 Pa.C.S. § 7101(a)(3) to be the protection of the public, not the regulation of the practice of law. We have held that rules of professional conduct applicable to attorneys do not have the force of substantive law but are to be utilized in disciplinary proceedings. *In re Estate of Pedrick*, 505 Pa. 530, 535, 482 A.2d 215, 217 (1984). The preamble to the current Rules of Professional Conduct expresses this scope of the Rules as follows:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

In keeping with that interpretation, a disciplinary rule which prohibits conduct such as attorney Lloyd's would not affect the validity of a contract created in violation of the rule. The statute, on the other hand, clearly establishes that such a contract is against public policy and is therefore void. Thus I view the statute, not as an impermissible intrusion on the power of this court to regulate the practice of law, but as a proper legislative act in the public interest affecting the substantive law of contracts.

Moreover, it is not our practice to review the constitutionality of statutes without hearing the advice of the Attorney General. The record fails to disclose that attorney Lloyd, the party raising the question of the constitutionality of 42 Pa.C.S. § 7101(a)(3), complied with Pa.R.C.P. 235, which states:

**RULE 235. NOTICE TO ATTORNEY GENERAL. CONSTITUTIONALITY OF STATUTE**

In any proceeding in a court subject to these rules in which an Act of Assembly is alleged to be unconstitutional and the Commonwealth is not a party, the party raising the question of constitutionality shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice. The Attorney General may intervene as a party or may be heard without the necessity of intervention....

For this additional reason, I think it is erroneous to declare the statute unconstitutional.

I dissent. I would reverse the order of the Superior Court and would reinstate the trial court's order dismissing the complaint.

NIX, C.J., and McDERMOTT, J., join this opinion.