[J-120-2016] [MO: Saylor, C.J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | |
|---|---|
| JEAN LOUISE VILLANI, INDIVIDUALLY AND IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GUERINO VILLANI, DECEASED | : No. 66 MAP 2016<br>:<br>: Appeal from the Order of the Chester<br>: County Court of Common Pleas, Civil<br>: Division, dated October 5, 2015<br>: Amending the August 27, 2015 order at<br>: No. 2012-09795<br>: |
| v. | : ARGUED:  December 6, 2016 |
| JOHN SEIBERT, JR. AND MARY SEIBERT | : |
| ------------------------------------------- | : |
| FREDERICK JOHN SEIBERT, JR. AND MARY SEIBERT | : |
| v. | : |
| JEAN LOUISE VILLANI AND THOMAS D. SCHNEIDER, ESQUIRE | : |
| APPEAL OF:  FREDERICK JOHN SEIBERT, JR. AND MARY SEIBERT | : |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  April 26, 2017**

This appeal presents a facial challenge[1] to the Dragonetti Act's constitutionality

as applied to attorneys, and requires that we decide whether the legislation violates this

---

[1]  I do not disagree with the Majority's characterization of this appeal as a "partial" facial challenge, as it is limited to application of the statute to a certain class of defendants (continued…)

Court's exclusive authority under Article V, Section 10(c) of the Pennsylvania Constitution to regulate the conduct of attorneys practicing in the courts of this Commonwealth. The Majority proposes that we disavow any claims to such exclusive constitutional authority. This, to me, is an incorrect and revolutionary proposition. Article V, Section 10(c) of our Constitution entrusts the regulation of attorneys practicing law in this Commonwealth exclusively to this Supreme Court. Because the Dragonetti Act constitutes an impermissible legislative encroachment into this Court's exclusive domain, it is unconstitutional. I must therefore dissent.

The Majority contends that the "notion" of this Court's exclusive power under Article V, Section 10(c) to regulate the conduct of attorneys "must be considered with great circumspection." Majority Op. at 21. Until now, this Court has not considered its exclusive power to regulate the conduct of lawyers as a mere "notion" requiring any "circumspection," but rather as an undeniable statement of constitutional fact. In adopting the Pennsylvania Rules of Disciplinary Enforcement, for example, this Court declared that "it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules." Pa.R.D.E. 103. Similarly, in our decisional law, we have repeatedly acknowledged our "inherent and exclusive power to govern the conduct of those privileged to practice law

_____

(…continued)
(attorneys). *See* Majority Op. at 24 n.13; *see also Ayotte v. Planned Parenthood of Northern New Eng.,* 546 U.S. 320, 328–329 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute, while leaving other applications in force.")

in this Commonwealth," *Wajert v. State Ethics Comm'n*, 420 A.2d 439, 442 (Pa. 1980), and have insisted that no other branch of our state government "may impose duties applicable to every attorney admitted to practice in the Commonwealth." *Maunus v. State Ethics Comm'n*, 544 A.2d 1324, 1325-26 (Pa. 1988); *see also Shaulis v. Pa. State Ethics Comm'n*, 833 A.2d 123, 129-32 (Pa. 2003); *Commonwealth v. Stern* 701 A.2d 568 (Pa. 1997); *Laffey v. Court of Common Pleas of Cumberland Cty.*, 468 A.2d 1084, 1085 (Pa. 1983); *Kremer v. State Ethics Comm'n*, 469 A.2d 593, 595 (Pa. 1983); *Office of Disciplinary Counsel v. Lucarini*, 472 A.2d 186, 187 (Pa. 1983); *Beyers v. Richmond*, 937 A.2d 1082, 1091 (Pa. 2007) (plurality); *Lloyd v. Fishinger*, 605 A.2d 1193, 1197 (Pa. 1992) (plurality); *Gmerek v. State Ethics Com'n*, 807 A.2d 812, 817 (Pa. 2002) (Saylor, C.J.) (Opinion in Support of Reversal) ("Certainly, this Court's responsibility and authority with regard to regulation of the general practice of law are: firmly grounded in [Article V, Section 10(c)]; supported by the concept of inherent powers, *see* Pa.R.D.E. 103; and as a function of the doctrine of separation of powers, guarded by the assertion of exclusivity.").

Prior to 1968, the Pennsylvania Constitution did not include an express statement regarding this Court's rulemaking authority. *In re 42 Pa.C.S. § 1703*, 394 A.2d 444, 447 (Pa. 1978). Nevertheless, in *In re Splane*, 16 A. 481 (Pa. 1889), this Court struck down an 1887 statute that purported to establish standards for application for admission to the Pennsylvania bar. In so doing, we rejected any suggestion that the Legislature has any constitutional power to regulate the conduct of attorneys or the practice of law in this state. We held that "[i]f there is anything in the constitution that is clear beyond controversy, it is that the Legislature does not possess judicial powers.

They are lodged exclusively in the judiciary as a co-ordinate department of the government." *Id.* at 483.

In 1968, an explicit statement of this Court's rulemaking authority was set forth in Article V, Section 10(c) of the newly amended Pennsylvania Constitution, which provides as follows:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions. Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.

Pa. Const. art. V, § 10(c).[2]

The Majority, apparently, is of the view that our authority under this constitutional provision to regulate the conduct of attorneys practicing in this Commonwealth is not exclusive, but rather is shared concurrently with the General Assembly. A careful examination of this constitutional language demonstrates that there is no basis for such

---

[2] Article V, Section 10(c) was adopted as part of the Pennsylvania Constitution of 1968. It was amended in November 2003 to add the concluding sentence relating to child witnesses.

a contention.[3]  To begin, under the principle of separation of the powers of government, no branch of the government (executive, legislative, or judicial) may exercise functions exclusively committed to another branch.  *See, e.g.*, *Wilson v. Philadelphia School District*, 195 A. 90, 93 (Pa. 1937); *Bailey v. Waters*, 162 A. 819, 821 (Pa. 1932).  This Court, as the ultimate interpreter of the Pennsylvania Constitution, has the responsibility to "determine whether a matter has been exclusively committed to one branch of the government."  *Stern*, 701 A.2d at 570 (citing *Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977)).

Article V of our Constitution, "The Judiciary," establishes the judicial branch of our tri-partite government.  It delineates, among other things, the structure and composition of the various courts within the Commonwealth's unified judicial system. The supervisory power for administration of the judicial branch is vested in the Supreme Court by virtue of Section 10 of Article V, which is broadly titled "Judicial Administration." Pa. Const. art. V, § 10.  Section 10(c) straightforwardly confers all judicial authority upon this Court: "The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts…"  *Id.*  This grant of authority explicitly includes the power to prescribe all rules relating to the "supervision of all officers of the Judicial Branch."  *Id.*  All attorneys practicing in this Commonwealth

---

[3]   In conducting this analysis, we must employ an unstrained analysis, one that "completely conforms to the intent of the framers and which reflects the views of the ratifying voter."  *In re Bruno*, 101 A.3d 635, 659 (Pa. 2014) (quoting *Jubelirer v. Rendell*, 953 A.2d 514, 528 (Pa. 2008)).  In other words, "the constitutional language controls and 'must be interpreted in its popular sense, as understood by the people when they voted on its adoption.'"  *Id.* (quoting *Stilp v. Commonwealth*, 905 A.2d 918, 939 (Pa. 2006)).

are "officers of the Judicial Branch." *See, e.g.*, *Office of Disciplinary Counsel v. Zdrok*, 645 A.2d 830, 834 (Pa. 1994).

The breadth of the Supreme Court's authority is manifested by the identification of three discrete areas of influence reserved to the Legislature in Article V, Section 10(c): the power to determine the jurisdiction of any court or justice of the peace, the right to set statutes of limitation and repose, and the authority to provide for the manner of testimony of child witnesses. *Id.* Given these specific, limited grants of authority to the Legislature,[4] there is no reading of Article V of our Constitution that leaves room for an interpretation that this Court's supervisory and rulemaking authority overlaps with the Legislature's authority.

With respect to our rulemaking powers, this Court has previously recognized that "there is simply no substantial support for the proposition that the grant of authority in Article V, Section 10(c) is anything other than exclusive."[5] *In re 42 Pa. C.S. § 1703*, 394

---

[4]   Other sections of Article V of the Constitution grant the General Assembly certain additional powers not relevant to the present analysis. For example, the General Assembly has the power "to establish classes of magisterial districts" based on constitutionally designated factors and to "fix the salaries to be paid justices of the peace in each class." Pa. Const. art V, § 7(b). The General Assembly also has the power to "establish additional courts or divisions of existing courts, as needed, or abolish any statutory court or division thereof." Pa. Const. art V, § 8. These sections are germane to the point that any legislative authority within the judicial branch was limited and defined by the citizens.

[5]   In support of its contention for the Legislature's concurrent authority to engage in judicial rulemaking, the Majority refers to this Court's recognition that the Legislature may promulgate rules of evidence, *see Commonwealth v. Olivo*, 127 A.3d 769 (Pa. 2015), and to our failure to suspend a particular procedural provision in the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-46, specifically section 9545(d)(1), which requires a signed certification as to each witness expected to testify at an evidentiary hearing. Majority Op. at 21.
(continued…)

A.2d at 448. In so concluding, we emphasized that Section 10(c) also expressly provides this Court with the authority to suspend any acts of the Legislature that are inconsistent with our rules, a power that would be "incongruous with a scheme in which the Legislature exercised concurrent rule-making authority." *Id.* "[A] power does not adhere to the legislature if it has specifically been … entrusted to another co-equal branch of government." *Id.* (quoting *Commonwealth v. Sutley*, 378 A.2d 780, 788 (Pa. 1977)).

This Court has consistently recognized its exclusive authority to regulate the conduct of attorneys practicing law in this Commonwealth. In *Wajert*, for example, a former common pleas judge filed a declaratory judgment action seeking a declaration

---

(…continued)

In *Olivo*, we addressed the constitutionality of 42 Pa.C.S. § 5920, which by its terms allows the introduction of expert testimony in certain cases involving sexual offenses to "assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted." *Id.* *Olivo* dealt with the distinct issue of whether the Legislature may enact substantive laws relating to the admissibility of certain forms of evidence in trials involving alleged violations of particular criminal statutes. As such, our decision there was unrelated to the issue presented here, namely whether this Court has the exclusive authority to regulate the conduct of attorneys practicing law in this Commonwealth.

To my knowledge, a litigant has never challenged the constitutionality of section 9545(d)(1) of the PCRA under the separation of powers doctrine. Regardless, our failure to suspend section 9545(d)(1) of the PCRA in no way diminishes the exclusive nature of our Article V, Section 10(c) rulemaking powers.

There may be circumstances not identified by the Majority where this Court turned a blind eye to legislative encroachment into the Supreme Court's exclusive powers under Article V, Section 10(c). This Court should be faulted for any sporadic dereliction in exercising or enforcing the dictates of Article V, Section 10(c). Falling short of our constitutional mandate on occasion, however, does not result in its relinquishment. We have no authority to dilute the tri-partite system of government established by the citizens of this Commonwealth.

that section 3(e) of the State Ethics Act, 65 P.S. § 403(e), was inapplicable to him as a former member of the judiciary. *Wajert*, 420 A.2d at 440. Section (3)(e) prohibited former officials or public employees from representing a person on any matter before the governmental body with which he or she had been associated for one year after leaving the position. *Id.* Noting that the Code of Professional Responsibility promulgated by this Court addressed precisely the same issue, we decided that section (3)(e) "constitute[d] an infringement on the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth." *Id.* at 442.

> Long before the Ethics Act was enacted, this Court adopted the Code of Professional Responsibility enunciating the standards governing the professional conduct of those engaged in the practice of law in this Commonwealth. In the rules enforcing that Code, this Court had made it abundantly clear that supervising the conduct of an attorney, including that of a former judge, before the courts of this Commonwealth was a matter exclusively for this Court.

*Id.*; *see also Maunus*, 544 A.2d at 1326 ("[T]his Court is the only governmental body entitled to regulate and discipline the professional class of attorneys. No other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney.").

Similarly, in *Stern*, we unanimously held that section 4117(b)(1) of the Crimes Code, which made it a crime for a lawyer to compensate or give "anything of value to a non-lawyer for recommending or securing employment by a client," was unconstitutional. *Stern*, 701 A.2d at 569. Section 4117(b)(1) was a "word-for-word restatement" of Rule 7.2(c) of our Rules of Professional Conduct, and had the effect of

"criminaliz[ing] the conduct of attorneys in their practice of law." *Id.* at 572-73. In striking down the statute, we did not question the Legislature's own exclusive power to establish and classify crimes, but determined that the Legislature could not, as a co-equal branch of government, promulgate a statute that regulated in an area within this Court's exclusive authority, namely the regulation of attorney conduct.

> We have seen fit to prohibit the practice of attorneys paying for referrals in the exercise of our exclusive authority to supervise the conduct of attorneys. This involves a matter entrusted solely to the Supreme Court under Article V, Section 10(c) of the Pennsylvania Constitution. We hold, therefore, that § 4117(b)(1) is unconstitutional because it infringes upon this authority.

*Id.* at 573.

Pursuant to our exclusive authority under Article V, Section 10(c), this Court has promulgated Rules of Professional Conduct, Rules of Disciplinary Enforcement, and Rules of Civil Procedure, all of which bear directly on the professional conduct of attorneys and the manner in which they may practice law. Any statute encroaching on our Article V, Section 10(c) powers, including our power to regulate the professional conduct of attorneys, "must be regarded as a vain attempt by the Legislature to exercise a power which it does not possess." *In re Shigon*, 329 A.2d 235, 240 n.14 (Pa. 1974). This Court has a clear duty to "invalidate legislative action repugnant to the constitution." *Zemprelli v. Daniels*, 436 A.2d 1165, 1169 (Pa. 1981).

In 1980, the General Assembly created a statutory cause of action for the "wrongful use of civil proceedings," commonly referred to as the Dragonetti Act, that

proscribes certain types of tortious litigation conduct. *See* 42 Pa.C.S. §§ 8351-8354.[6]

Pursuant to the Act, an attorney (or any other person) "who takes part in the procurement, initiation or continuation of civil proceedings against another" may be liable under described circumstances for a variety of damages, including, inter alia, harm to reputation, emotional distress, pecuniary losses, attorney fees, and punitive damages. 42 Pa.C.S. § 8353. The plaintiff must show that the underlying proceedings were terminated in his or her favor and that the attorney (or other person) acted "in a grossly negligent manner or without probable cause" and "primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa.C.S. § 8351(a). Section 8352 of the Dragonetti Act provides that an attorney defendant has probable cause in the underlying proceeding if he or she "reasonably believes in the existence of the facts upon which the claim is based, and either, reasonably believes that under those facts the claim may

---

[6] Given the Majority's attempt to characterize the legislative process as superior to this Court's adjudicative process in making substantive law, Majority Op. at 24-25, the history behind the Dragonetti Act deserves some discussion. In addition to the fundamental problem that the Legislature has no power to act to define misconduct by attorneys, in my view, any deference to the Legislature because of its deliberate fact gathering before promulgating legislation is entirely misplaced here, as the Legislature reportedly acted hastily to enact this statute – at the behest of a single aggrieved litigant (Joseph Dragonetti). *See* Pa. L. Journal, 164th General Assembly, No. 70, Reg. Sess., 2634-35 (Nov. 19, 1980) (characterizing the process of enacting the statute as rushed and "last minute," despite a lack of urgency) (statement of Rep. Spitz). Mr. Dragonetti apparently led a "one-man crusade" to ensure the Act's passage. *See id.* (stating that one individual "has been the moving factor behind this legislation") (statement of Rep. Kukovich). His crusade, ultimately successful, was focused on abolishing the "old English rule" – a requirement that this Court had recognized, for more than a hundred years, as an essential element of the common law cause of action for malicious use of process, discussed in more detail *infra*. *See Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 413, 415 (Pa. 1943); *Johnson v. Land Title Bank & Trust Co.*, 198 A. 23, 24 (Pa. 1938); *Farmers' Bank v. McKinney*, 7 Watts & Serg. 214, 215 (Pa. 1838).

be valid under existing or developing law" or believes "in good faith" that his or her action was "not intended to merely harass or maliciously injure the opposite party." 42 Pa.C.S § 8352(1),(3).[7]

The Dragonetti Act indisputably and notoriously regulates the conduct of attorneys engaged in the practice of law. This conclusion is not contested, even by the Majority, which acknowledges that the Dragonetti Act "embodies disapprobation of a specified range of conduct by attorneys." Majority Op. at 23. This Court has prescribed Rules of Professional Conduct, Rules of Disciplinary Enforcement and Rules of Civil Procedure that specifically address precisely the same conduct the Legislature attempts to regulate under the Dragonetti Act. Rule 3.1 of the Rules of Professional Conduct provides that an attorney "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Pa.R.P.C 3.1. Rule 208 of the Rules of Disciplinary Enforcement sets forth the procedures, from investigation to final disposition, for enforcing violations of the Rules of Professional Conduct (including Pa.R.P.C 3.1), and Rule 204 lists the types of discipline that may be imposed for said violations, from permanent disbarment to private informal admonition. Pa.R.D.E. 204, 208.[8] Rule 1023.1 of the Rules of Civil Procedure

---

[7] Under Section 8352, a different probable cause standard applies to clients who rely on the advice of counsel. 42 Pa.C.S. § 8352(2).

[8] Pursuant to our Article V, Section 10(c) powers, we have established a comprehensive system for disciplining attorneys which functions effectively absent any interference by the Legislature. Our disciplinary system is comprised of a Disciplinary Board made up of appointed, uncompensated attorneys and non-attorneys and Hearing Committees made up of appointed, uncompensated attorneys. Acceptance of an appointment as a (continued…)

provides that the signing, filing, submitting or later advocating of any document constitutes a certification that the document is not being presented for any improper purpose, such as harassment or delay; that the claims, defense and legal contentions set forth therein are warranted by the existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; that the factual allegations have evidentiary support or will have evidentiary support; and that denials have evidentiary support or are reasonably based on a lack of information or belief. Pa.R.C.P. 1023.1(c). Rule 1023.1(d) provides that sanctions may be imposed for violations of subsection (c). Pa.R.C.P. 1023.1(d).

In its written opinion in support of its ruling that the Dragonetti Act is unconstitutional, the trial court discussed in some detail the specific inconsistences between the Dragonetti Act and these rules. Trial Court Opinion, 8/27/2015, at 5-6. In

---

(…continued)
member of the Disciplinary Board of the Pennsylvania Supreme Court or as a hearing officer requires hundreds of hours of uncompensated service to the legal profession. The Board's work is dedicated to the application of the Rules of Professional Conduct promulgated by this Court, which serve as the polestar for the practice of law, the protection of clients and the integrity of the courts of this Commonwealth.

The Disciplinary Board of the Pennsylvania Supreme Court maintains an Office of the Secretary and Office of Disciplinary Counsel, both employing a range of paid staff members. Attorneys admitted to practice in our Commonwealth fund the operation of our disciplinary system through a fee structure imposed by the Pennsylvania Supreme Court. All of these entities operate under our exclusive authority. The dedicated manner in which our disciplinary system operates is evidenced by the fact that, in 2016 alone, the Office of Disciplinary Counsel received 3,900 complaints regarding attorney conduct and resolved 3,667 complaints, of which 240 resulted in discipline. Each proposed order of discipline is meticulously reviewed by the justices of this Court before it is entered. *See* Annual Report, The Disciplinary Board of the Supreme Court of Pennsylvania, 2016, *available at* http://www.padisciplinaryboard.org/about/annual-reports.php (noting that a disciplinary matter involving a single attorney may consist of multiple complaints).

my view, it is not necessary to identify the precise inconsistencies, as such an effort serves only to highlight the fact that the Legislature should never have encroached on this Court's exclusive authority to regulate in this area. *See Stern*, 701 A.2d 73. The Dragonetti Act purports to regulate the conduct of attorneys that only this Court, pursuant to Article V, Section 10(c) of the Pennsylvania Constitution, is empowered to regulate.[9] In so far is it applies to attorneys, the Dragonetti Act is unconstitutional.

A finding that the Dragonetti Act is unconstitutional as applied to lawyers would not deprive litigants of a remedy in the face of tortious litigation conduct.[10] I emphasize that a finding of unconstitutionality in no way immunizes attorneys from civil suit. As was true before the Dragonetti Act, litigants may bring civil suits against attorneys asserting claims for malicious use of process or abuse of process, two common law causes of action this Court developed and blessed in recognition of the need for a remedy for legal injuries inflicted by aberrant attorneys under our watch.

Long before the General Assembly enacted the Dragonetti Act, this Court recognized a tort for the malicious use of process which could be brought against an attorney. *See Farmers' Bank v. McKinney*, 7 Watts & Serg. 214, 215 (Pa. 1838) (stating

---

[9] The Majority's attempt to carve out constitutional space for the Dragonetti Act by virtue of it being substantive and remedial in nature is unavailing. These traits do nothing to mitigate the fact that it sets forth rules of conduct and discipline governing each and every attorney admitted to practice in the courts of this Commonwealth. I do not question the Legislature's authority to create substantive laws, generally, but any such laws must withstand constitutional muster. *See Stern*, 701 A.2d at 572. As described herein, a legislative enactment that regulates the conduct of attorneys, regardless of its substantive (as opposed to procedural) features, is unconstitutional.

[10] The Dragonetti Act could still be used to hold a non-lawyer liable for the wrongful use of civil proceedings. *See* 1 Pa.C.S. § 1925. Pursuant to 1 Pa.C.S. § 1925, "a statute may be invalid as applied to a certain class and still be generally valid." *Com., Dep't of Ed. v. First Sch.*, 370 A.2d 702, 705 n.11 (Pa. 1977).

that when "practitioners at law" used process "maliciously and with design to oppress," they "could be sued by the party aggrieved … upon general principles of policy and justice"). To maintain an action for malicious use of process at common law, a plaintiff had to prove (1) that the defendant initiated legal process against him in the underlying action, (2) without probable cause and with malice, and (3) that the action against him or her was unsuccessful. *See Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 413, 415 (Pa. 1943); *Johnson v. Land Title Bank & Trust Co.*, 198 A. 23, 24 (Pa. 1938). The plaintiff also had to prove that there had been a seizure or interference with his person or property in the underlying proceeding. *Id.* This latter element, dating back to thirteenth century England, is known as the "old English rule." *See* Pa. L. Journal, 164th General Assembly, No. 70, Reg. Sess., 2634-35 (Nov. 19, 1980) (statement of Rep. Spencer).

An attorney can also be sued at common law for the separate and distinct tort of abuse of process. *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987); *see generally* G. Bochetto, D. Heim, J. O'Connell & R. Tintner, *Wrongful Use of Civil Proceedings and Related Torts in Pennsylvania* (1st ed. 2016) (citing cases and distinguishing between the two common law torts). An action for abuse of process can be brought to hold a person liable for "the improper use of process after it has been issued." *McGee,* 535 A.2d at 1023. Unlike a malicious use of process suit, an abuse of process suit alleges that civil process was employed "for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it." *Id.*; *see also Mayer v. Walter*, 64 Pa. 283, 286 (1870). Abuse of process need not relate to the initiation of proceedings and does not require either a lack of probable cause or that the underlying

action was resolved in the plaintiff's favor. *Id.* Moreover, the "old English rule" was never an element of abuse of process. *McGee*, 535 A.2d at 1022.

In the proper case, a future litigant could argue to convince this Court to abolish the "old English rule," the aspect of the common law that Mr. Dragonetti found objectionable when he took his entreaty to the Legislature. *See supra*, note 6. We have explained that "[t]here is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 353 (Pa. 2014). Moreover, developing the common law is one of this Court's equitable powers. *See id.* at 352 (noting our "authority to modify the common law forms of action to the right involved"). When the Dragonetti Act was enacted, a majority of our sister states had already done away with the "old English rule," and section 674 of Restatement (Second) of Torts (1977) reflects this trend while also eliminating the common law requirement to show malice. *See* G. Bochetto, D. Heim, J. O'Connell & R. Tintner, *Wrongful Use of Civil Proceedings and Related Torts in Pennsylvania*, § 1-1, at 5 (1st ed. 2016). We have, in the past, been convinced by logic and the interests of justice to adopt a section of the Restatement that differs from our common law. *See Tincher*, 104 A.3d at 354 (cautioning that "[a]s with any other common law rules, the normative principles of an 'adopted' section of a restatement are properly tested against the facts of each case"). Any change in common law tort claims imposing liability on attorneys for the manner in which they practice law, including bringing and litigating lawsuits, must come from this Court through the exercise of our equitable power to develop the common law. This Court is not only uniquely constitutionally qualified to engage in any such transformative

process (given our expertise developed as a result of our supervisory authority in this realm), we are constitutionally the exclusive branch of government empowered to do so.

Enactment of the Dragonetti Act was an impermissible intrusion into this Court's exclusive province to regulate the conduct of attorneys in the practice of law in this Commonwealth. I would therefore rule that it is unconstitutional and unenforceable as applied to lawyers. Accordingly, I dissent.